UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO. 22-CV-60879-VALLE

ERNESTINE BROOMFIELD,

    Plaintiff,

v.

KILOLO KIJAKAZI,
*Acting Commissioner of the*
*Social Security Administration*,

    Defendant.
_____/

## ORDER ON MOTIONS FOR SUMMARY JUDGMENT

THIS MATTER is before the Court upon Plaintiff's Motion for Summary Judgment (ECF No. 20) and Defendant's Motion for Summary Judgment (ECF No. 21) (together, "the Motions"). Pursuant to the parties' consent, this case is before the undersigned for all proceedings, including trial and entry of final judgment. (ECF Nos. 18, 19); *see also* 28 U.S.C. § 636(c).

After due consideration of the record and the parties' briefs, including Defendant's Response (ECF No. 22), Plaintiff's Reply (ECF No. 24), and being otherwise fully advised on the matter, Plaintiff's Motion for Summary Judgment is **DENIED**, Defendant's Motion for Summary Judgment is **GRANTED**, and the Administrative Law Judge's Decision ("ALJ's Decision") is **AFFIRMED** for the reasons set forth below.

## I.     PROCEDURAL HISTORY

In May 2020, Plaintiff applied for supplemental security income ("SSI") under the Social Security Act (the "Act"), 42 U.S.C § 401 *et seq.*, alleging a disability onset date of May 1, 2017. (R. 184).[1] Plaintiff's application was denied initially and again upon reconsideration. (R. 100-02, 112-13). Thereafter, Plaintiff requested a hearing, which was held telephonically on December 1, 2021, before ALJ Lissette Labrousse. (R. 39-66, 114, 117-19). Plaintiff appeared with counsel and testified at the hearing. (R. 43-54). A Vocational Expert ("VE") also testified at the hearing. (R. 55-63). On December 27, 2021, the ALJ issued a decision denying Plaintiff's application and finding that Plaintiff was not disabled within the meaning of the Act. (R. 18-33).

Thereafter, the Appeals Council denied Plaintiff's request for review, rendering the ALJ's Decision the Commissioner's "final decision." (R. 1-6); *see Chester v. Bowen*, 792 F.2d 129, 131 (11th Cir. 1986). Plaintiff now seeks judicial review of the ALJ's Decision. (ECF No. 1); *see also* 42 U.S.C. § 405(g). Both parties have moved for summary judgment, and the Motions are ripe for adjudication.

## II.    STANDARD OF REVIEW

Judicial review of the ALJ's Decision is limited to whether there is substantial evidence in the record as a whole to support the ALJ's finding and whether the ALJ applied the correct legal standards in making her determination. *Biestek v. Berryhill*, 139 S. Ct. 1148, 1154 (2019); *Carson v. Comm'r of Soc. Sec.*, 440 F. App'x 863, 864 (11th Cir. 2011) (citations omitted); *see also* 42 U.S.C. § 405(g). Substantial evidence is more than a scintilla and is such relevant evidence as a reasonable person would accept as adequate to support a conclusion. *Biestek*, 139 S. Ct. at 1154 (quoting *Consol. Edison*

---

[1] All references are to the record of the administrative proceeding, which was filed as part of the Defendant's Answer. *See* (ECF No. 14).

*Co. v. N.L.R.B.*, 305 U.S. 197, 229 (1938)); *Carson*, 440 F. App'x at 864 (quoting *Crawford v. Comm'r*, 363 F.3d 1155, 1158 (11th Cir. 2004)); *accord Hale v. Bowen*, 831 F.2d 1007, 1011 (11th Cir. 1987) (substantial evidence is "more than a scintilla, but less than a preponderance"). A court, however, "may not decide the facts anew, reweigh the evidence, or substitute [its] judgment for that of the [ALJ]." *Winschel v. Comm'r of Soc. Sec.*, 631 F.3d 1176, 1178 (11th Cir. 2011) (citation omitted). Even if evidence preponderates against the ALJ's Decision, a court must affirm "if the decision is supported by substantial evidence." *Bloodsworth v. Heckler*, 703 F.2d 1233, 1239 (11th Cir. 1983) (citing 42 U.S.C. § 405(g)). Within this narrow role, however, courts do not act as automatons. *MacGregor v. Bowen*, 786 F.2d 1050, 1053 (11th Cir. 1986), *abrogated on other grounds by Harner v. Soc. Sec. Admin., Comm'r*, 38 F.4th 892 (11th Cir. 2022). Rather, they "must scrutinize the record as a whole to determine if the decision reached is reasonable and supported by substantial evidence." *Id.* (citation omitted).

To qualify for benefits, a claimant must be disabled within the meaning of the Act. *See* 42 U.S.C. § 1382 (SSI standard). A claimant is disabled if she is unable "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 1382c(a)(3)(A). A "physical or mental impairment" is one that "results from anatomical, physiological or psychological abnormalities which are demonstrable by medically acceptable clinical and laboratory diagnostic techniques." 42 U.S.C. § 1382c(a)(3)(D).

To determine eligibility, the ALJ employs a five-step sequential evaluation:

(1) Is the person presently unemployed?
(2) Is the person's impairment severe?
(3) Does the person's impairment meet or equal one of the specific impairments set forth in 20 C.F.R. Part 404, Subpart. P, Appendix 1 (the "Listings")?
(4) Is the person unable to perform his or her former occupation?
(5) Is the person unable to perform any other work within the economy?

3

20 C.F.R. § 416.920(a)(4) (evaluation process for SSI benefits). An affirmative answer to any of the above questions leads either to the next question or, on Steps 3 and 5, to a finding of disability. *McDaniel v. Bowen*, 800 F.2d 1026, 1030 (11th Cir. 1986). A negative answer to any question, other than Step 3, leads to a determination of "not disabled." *Id.*

Importantly, the burden of proof rests on the claimant through Step 4. *Phillips v. Barnhart*, 357 F.3d 1232, 1241 n.10 (11th Cir. 2004)*, abrogated on other grounds by Jones v. Soc. Sec. Admin., Comm'r*, No. 22-10507, 2022 WL 3448090 (11th Cir. 2022). At Step 4, the ALJ must consider: (i) the claimant's residual functional capacity ("RFC"); and (ii) the claimant's ability to return to her past relevant work. 20 C.F.R. § 416.920(a)(4)(iv). The regulations define RFC as that which an individual is still able to do despite the limitations caused by her impairments. 20 C.F.R. § 416.945(a). The ALJ will "assess and make a finding about [the claimant's RFC] on all the relevant medical and other evidence" in the case. 20 C.F.R. § 416.920(e). The RFC assessment is used to determine whether the claimant can return to her past relevant work under Step 4, and if so, "the ALJ will conclude that the claimant is not disabled." *Phillips*, 357 F.3d at 1238 (citations omitted). If a claimant cannot return to her past relevant work, then the ALJ proceeds to Step 5. *Id.*

At Step 5, the ALJ considers the claimant's RFC, age, education, and work experience to determine whether the claimant "can make an adjustment to other work." 20 C.F.R. § 416.920(a)(4)(v); *Phillips*, 357 F.3d at 1239. The ALJ must determine if there is other work available in significant numbers in the national economy that the claimant can perform. *Phillips*, 357 F.3d at 1239. If the claimant can make the adjustment to other work, the ALJ will determine that the claimant is not disabled. *Id.* Conversely, if the claimant cannot make the adjustment to other work, the ALJ will determine that the claimant is disabled. *Id.* The ALJ may determine whether the claimant is able to adjust to other work in the national economy by either: (1) applying the Medical

Vocational Guidelines (contained within 20 C.F.R. Part 404, Subpart P, Appendix 2); or (2) using a VE, who can opine on whether someone with the claimant's limitations can obtain employment in the national economy. *Id.* at 1239-40.

### III.  THE ALJ'S DECISION

On December 27, 2021, after reviewing the evidence and conducting the sequential analysis, the ALJ concluded that Plaintiff "has not been under a disability within the meaning of the [Act] since May 26, 2020, the date the application was filed." (R. 19, 33).

At Step 1, the ALJ determined that Plaintiff has not engaged in substantial gainful activity since May 26, 2020. (R. 20).

At Step 2, the ALJ found that Plaintiff had the following severe impairments: Type-2 diabetes mellitus, hypertension, and bipolar disorder. (R. 21).

At Step 3, the ALJ concluded that Plaintiff did not have an impairment or combination of impairments that meets or medically equals the severity of any one of the Listings. (R. 22).

At Step 4, the ALJ determined that Plaintiff has the RFC to perform medium work.[2] (R. 24). Plaintiff was able to: (i) frequently climb; (ii) perform simple, routine, rote, or repetitive tasks; (iii) interact with coworkers, the general public, and supervisors occasionally; and (iv) adapt to occasional, routine, and predictable workplace changes independently. *Id.* Plaintiff must also avoid workplace hazards such as unprotected heights, moving mechanical parts, and operating heavy machinery. *Id.*

Based on this RFC, the ALJ concluded that Plaintiff was not able to perform her past relevant work as a child monitor. (R. 31). The ALJ thus proceeded to Step 5 of the sequential analysis and

---

[2] Medium work involves lifting no more than 50 pounds at a time with frequent lifting or carrying of objects weighing up to 25 pounds. If someone can do medium work, she can also do sedentary and light work. 20 C.F.R. § 416.967.

found that Plaintiff could perform other jobs in the national economy, such as laundry worker, kitchen helper, hand packager, and bus cleaner, all unskilled jobs with a medium exertional level. (R. 32). Accordingly, the ALJ concluded that Plaintiff is not disabled. (R. 33).

## IV.  **DISCUSSION**

Plaintiff raises three arguments on appeal. First, Plaintiff argues that the ALJ's RFC is flawed because the ALJ found Plaintiff's gastrointestinal impairments to be non-severe. (ECF No. 20-2 at 2-5). Second, Plaintiff challenges the ALJ's evaluation of the medical opinions of the consultative examiner (Dr. Wifredo A. Fernandez) and Plaintiff's psychiatric nurse (ARNP Nelson Andino-Rios) regarding Plaintiff's mental impairments.[3] *Id.* at 5-15. Lastly, Plaintiff argues that the ALJ did not properly assess Plaintiff's subjective complaints regarding Plaintiff's pain and physical impairments (with a focus on gastrointestinal and foot impairments). *Id.* at 15-20. For the reasons discussed below, the undersigned finds that the ALJ applied the proper legal standards and the ALJ's Decision is supported by substantial evidence. Accordingly, the ALJ's Decision is affirmed.

### A. Substantial Evidence Supports the ALJ's RFC Assessment

A claimant's RFC is the most a claimant can do despite the limitations caused by her impairments. 20 C.F.R. § 416.945(a)(1); *Phillips*, 357 F.3d at 1238. The RFC is based on all the relevant evidence in the record and is used at Step 4 of the sequential evaluation process to decide if a claimant can do her past relevant work; and, if necessary, at Step 5 to decide if a claimant can adjust to other work that exists in significant numbers in the national economy. 20 C.F.R. § 416.945(a)(5)(i)-(ii). Social Security regulations classify the physical exertion requirements for

---

[3] Plaintiff also summarily references the opinion of the State Agency consultants. *See* (ECF No. 20-2 at 8). But arguments raised in such cursory form are waived. *See N.L.R.B. v. McClain of Georgia, Inc.*, 138 F.3d 1418, 1422 (11th Cir. 1998) (noting that arguments raised "in a perfunctory manner, without supporting arguments and citation to authorities, are generally deemed to be waived.") (citation omitted).

work as sedentary, light, medium, heavy, and very heavy. *See* 20 C.F.R. § 416.967. Along with age, education, and work experience, the ALJ considers a claimant's RFC in determining whether the claimant can work. *Lewis v. Callahan*, 125 F.3d 1436, 1440 (11th Cir. 1997) (citation omitted). Ultimately, the responsibility for determining a claimant's RFC rests with the ALJ, and the ALJ is not required to give any special significance to the opinion of medical sources in determining the RFC. *Lewen v. Comm'r of Soc. Sec.*, 605 F. App'x 967, 968 (11th Cir. 2015) (upholding ALJ's RFC finding that accounted for medical opinions not specifically discussed by the ALJ).

Plaintiff challenges the ALJ's findings at Step 2 that Plaintiff's "gastroesophageal reflux disease [is] not severe." (R. 21); (ECF No. 20-2 at 3-5). Plaintiff's argument regarding the ALJ's Step 2 analysis and its effect on the ALJ's RFC is, however, without merit. At Step 2, an ALJ considers the severity of a claimant's impairments. 20 C.F.R. § 416.920(a)(4)(ii). The Step 2 inquiry "acts as a filter" so that insubstantial impairments will not be given much weight. *Tuggerson-Brown v. Comm'r of Soc. Sec.*, 572 F. App'x 949, 950 (11th Cir. 2014) (citation omitted). Although the standard for severity is low, the severity of an impairment "'must be measured in terms of its effect upon ability to work.'" *D'Andrea v. Comm'r of Soc. Sec. Admin.*, 389 F. App'x 944, 945 (11th Cir. 2010) (citation omitted). Additionally, the finding of any severe impairment is sufficient to satisfy Step 2 of the sequential analysis. *Griffin v. Comm'r of Soc. Sec.*, 560 F. App'x 837, 841-42 (11th Cir. 2014) (citations omitted). Thus, any error in finding Plaintiff's gastrointestinal impairments not severe was harmless in that the ALJ proceeded through Step 5 of the analysis. *Griffin*, 560 F. App'x at 841-42 (citations omitted). Here, the ALJ concluded that Plaintiff's severe impairments included Type-2 diabetes mellitus, hypertension, and bipolar disorder. (R. 21). Thus, contrary to Plaintiff's argument, the ALJ's finding that Plaintiff's gastrointestinal impairments were non-severe was, at most, harmless error.

Moreover, substantial evidence supports the ALJ's conclusion that Plaintiff's gastrointestinal impairments are not severe. For example, in reaching this conclusion, the ALJ explained that "there is a lack of medical records which would support findings of severity." *Id.* "Further, the medical records regarding these impairments reveal no significant or vocationally relevant limitations." *Id.* For example, regarding Plaintiff's allegations of vomiting and nausea, the ALJ noted:

> [T]hese symptoms were treated when the claimant was diagnosed with gastritis. As stated, this condition is "not severe" as the claimant was treated and recovered from her symptoms. (See Exhibits 5F, 6F, 16F and 18F). Similarly, the claimant's gastroesophageal reflux disease is also "not severe" as it is a manageable impairment.

(R. 21). Exhibits 5F, 6F, 16F, and 18F are medical records regarding Plaintiff's gastrointestinal impairments. (R. 954-69, 1439-53, 1505-17). For example, Exhibits 5F/16F contain treatment notes for visits to a gastroenterologist between August and November 2020 for vomiting with nausea. (R. 954-61, 1439-53). More specifically, in August and October 2020, Plaintiff was diagnosed with chronic gastroesophageal reflux disease ("GERD") and recommended for an endoscopy. (R. 1448, 1452). Despite the diagnosis, Plaintiff was to continue taking Nexium and she was counseled on diet and behavioral modifications, including avoidance of: (i) certain foods; (ii) obesity; (iii) smoking; and (iv) lying down within three hours of meals. (R. 968, 1448). In a November 2020 follow-up visit, Plaintiff was diagnosed with helicobacter pylori, gastritis, and duodenal bulb ulcer, and commenced an antibiotic medication regimen for 14 days, with PPI[4] for two months. (R. 955, 1443-44) ; *see also* (R. 1508) (Exhibit 18F) (10/2020 treatment note recommending PPI daily; follow-up for biopsy results and further management).

Plaintiff's reference to reoccurring gastrointestinal symptoms that resulted in emergency room visits in June and November 2021 is unavailing. (ECF No. 20-2 at 4). Although Plaintiff presented

---

[4] According to Plaintiff , "PPI" refers to proton pump inhibitors. (ECF No. 20-1 at 4 n.4); *see also* https://www.merriam-webster.com/dictionary/proton%20pump%20inhibitor#medicalDictionary (last visited Sept. 28, 2023).

to the emergency room in June 2021 with abdominal pain and vomiting, the treatment records indicate "no acute distress." (R. 1676). Further, Plaintiff had "no acute abnormality identified within the abdomen or pelvis to account for [her] clinical symptoms." (R. 1681). In November 2021, Plaintiff returned to the emergency room complaining of gastric discomfort and nausea. (R. 1702). Plaintiff, however, was discharged the same day with a medication regimen and days later reported no symptoms of nausea or vomiting at a follow-up visit. (R. 1707, 1733); *see also* (R. 1735) (Plaintiff was negative for abdominal pain, blood in stool, diarrhea, heartburn, nausea, and vomiting one week after hospital discharge). Additionally, none of these treatment notes include any work-related limitations caused by Plaintiff's gastrointestinal symptoms. Lastly, Plaintiff's diagnosis alone does not establish the severity of her impairments or any resulting work-related limitations. *Bryan v. Saul*, No. 19-CV-63164, 2021 WL 707594, at *10 (S.D. Fla. Feb. 6, 2021), *report and recommendation adopted*, 2021 WL 705776 (S.D. Fla. Feb. 23, 2021); *Wood v. Astrue*, No. 10-CV-2373-T-17AEP, 2012 WL 834137, at *5 (M.D. Fla. Feb. 14, 2012), *report and recommendation adopted*, 2012 WL 834132 (M.D. Fla. Mar. 13, 2012) (citation omitted) (concluding diagnosis alone did not amount to functional limitations that would have changed the outcome of ALJ's decision); *Moore v. Barnhart*, 405 F. 3d 1208, 1213 n.6 (11th Cir. 2005) (mere existence of impairments does not reveal the extent to which they limit a claimant's ability to work) (citation omitted).

Against this record, the ALJ's Decision reflects the ALJ's consideration of Plaintiff's impairments as a whole. *See, e.g., Borges v. Comm'r of Soc. Sec.*, 771 F. App'x 878, 882 (11th Cir. 2019) ("[W]hile the ALJ may not have referred to every piece of evidence. . . used to formulate the RFC, [the] decision is nevertheless sufficient to allow [the] Court to conclude that the ALJ considered the claimant's medical condition as a whole and that substantial evidence supported [the] RFC assessment); *Herron v. Soc. Sec. Admin., Comm'r*, 649 F. App'x 781, 787 (11th Cir. 2016) (there is no "rigid requirement that the ALJ specifically refer to every piece of evidence, so long as the ALJ's

decision . . . is not a broad rejection" that leaves [the] Court with insufficient information to conclude that the ALJ considered the claimant's medical condition as a whole") (citation omitted).  Ultimately, the issue is not whether some evidence might support Plaintiff's allegations.  *See Dyer v. Barnhart*, 395 F.3d 1206, 1210 (11th Cir. 2005); *Ellison v. Barnhart*, 355 F.3d 1272, 1275 (11th Cir. 2003).  Nor is it for the Court to "decide the facts anew, reweigh the evidence, or substitute [its] judgment for that of the [ALJ]."  *Winschel*, 631 F.3d at 1178 (citation omitted).  Rather, the Court "must scrutinize the record as a whole to determine if the decision reached is reasonable and supported by substantial evidence."  *MacGregor*, 786 F.2d at 1053.  Furthermore, even if evidence preponderates against the ALJ's Decision, a court must affirm "if the decision is supported by substantial evidence."  *Bloodsworth*, 703 F.2d at 1239.  Thus, after reviewing the record as a whole, the undersigned finds that substantial evidence supports the ALJ's RFC determination.

### B. The ALJ Properly Evaluated the Medical Opinions Regarding Plaintiff's Mental Impairments

Social Security regulations require the ALJ to consider and evaluate all evidence, including medical opinions.  20 C.F.R. § 416.913(a).  Medical opinions are statements "from a medical source about what [the claimant] can still do despite [her] impairment(s) and whether [the claimant] ha[s] one or more impairment-related limitations or restrictions" regarding her ability to perform physical demands (such as sitting, standing, walking, reaching, and handling, among others) and mental demands of work activities (such as understanding, remembering, and maintaining concentration, persistence, and pace).  20 C.F.R. § 416.913(a)(2).

Relevant here, for medical opinions on claims filed after March 2017, the treating source rule has been eliminated.  *Matos v. Comm'r of Soc. Sec.*, No. 21-CV-11764, 2022 WL 97144, at *4 (11th Cir. Jan. 10, 2022) ("This new regulatory scheme no longer requires the ALJ to either assign more weight to medical opinions from a claimant's treating source or explain why good cause exists to

disregard the treating source's opinion."); *Ramos v. Kijakazi*, No. 20-CV-23478, 2021 WL 5746358, at *9 (S.D. Fla. Nov. 9, 2021); *Bonilla v. Saul*, No. 19-CV-25323, 2020 WL 9048787, at *4 (S.D. Fla. Oct. 23, 2020). Under the revised regulations, while a medical source's treatment relationship with a claimant remains a factor to be considered in assessing the persuasiveness of a medical source opinion, the opinion of a treating source is no longer entitled to controlling weight or deferential treatment. *Ramos*, 2021 WL 5746358, at *9; *Bonilla*, 2020 WL 9048787, at *4. Instead, the persuasiveness of any medical source's opinion (whether treating, examining, or reviewer) depends on whether the opinion is: (i) supported by objective medical evidence and the source's explanation of his opinion; and (ii) consistent with other evidence in the medical record. 20 C.F.R. § 416.920c(c)(1)-(2). These factors, referred to as "supportability" and "consistency," are the "most important factors" in the ALJ's analysis. 20 C.F.R. § 416.920c(b)(2); *Matos*, 2022 WL 97144, at *4; *Bonilla*, 2020 WL 9048787, at *4. Additional factors include treatment relationship with the claimant, area of specialization, and "other factors that tend to support or contradict a medical opinion or prior administrative medical finding." 20 C.F.R. § 416.920c(c)(3)-(5). In addition, although the ALJ must articulate how she considered medical opinions from all medical sources, the ALJ *need only* explain her consideration of the supportability and consistency factors. *Bonilla*, 2020 WL 9048787, at *5; 20 C.F.R. § 416.920c(b)(2).

To reiterate, the ALJ concluded that Plaintiff's severe impairments were Type-2 diabetes mellitus, hypertension, and bipolar disorder. (R. 21). In challenging the ALJ's assessment of the medical opinions, Plaintiff focuses on the ALJ's assessment of her mental impairments and does not challenge the ALJ's physical RFC determination.[5] (ECF No. 20-2 at 6 n.10).

---

[5] That said, however, Plaintiff's challenge to the ALJ's credibility finding includes the ALJ's consideration of Plaintiff's physical impairments. *See* (ECF No. 20-2 at 18-19) (referencing Plaintiff's subjective complaints of degenerative changes in lumbar spine and right foot).

*1. The ALJ Properly Evaluated the Opinion of Dr. Fernandez Regarding Plaintiff's Mental Impairments*

On November 12, 2020, Plaintiff underwent a physical consultative examination by Dr. Fernandez. (R. 1073-1078) (Ex. 9F). While conducting the physical examination, Dr. Fernandez deferred to a mental health examination for Plaintiff's bipolar disorder, manic depression, and schizophrenia.[6] (R. 1075). As part of his general physical examination, however, Dr. Fernandez noted that Plaintiff has "difficulty understanding normal conversation speech;" "great difficulty for work-related activities involving common understanding and memory;" "sustain[ed] concentration was slow and persistence was limited;" "difficulty [with] normal social interaction and adaptation during [the] limited exam." *Id.*

The ALJ found Dr. Fernandez's opinion regarding Plaintiff's physical impairments to be persuasive and supported by the totality of the evidence. (R. 26). According to Plaintiff, however, the ALJ erred in not addressing Dr. Fernandez's statements regarding Plaintiff's mental impairments. (ECF No. 20-2 at 11). Plaintiff's argument is unpersuasive. Rather, the undersigned finds that Dr. Fernandez's statement regarding Plaintiff's mental health is not a medical opinion because he did not opine on the extent of any resulting functional limitations and he deferred to a mental health expert on Plaintiff's mental condition. *See* 20 C.F.R. § 416.913(a)(2)(ii) (defining medical opinion as a statement from a medical source about what a claimant can still do despite her impairments and whether she has impairment-related limitations on the ability to perform the demands of work). Further, an ALJ is not required to adopt every finding made by a doctor whose opinion the ALJ finds persuasive. *See, e.g., Sesler v. Comm'r of Soc. Sec.*, No. 20-CV-2835-DNF, 2021 WL 5881678, at *6 (M.D. Fla. Dec. 13, 2021) ("[A]n ALJ need not adopt every part of an opinion that the ALJ finds persuasive.") (citation omitted)); *Breaux v. Kijakazi*, No. 20-CV-21917 (S.D. Fla. July 22, 2021)

---

[6] Dr. Fernandez is not a psychologist or mental health expert.

(ECF No. 29 at 14, 17) (explaining that the "requirements within regulations 20 C.F.R. § 416.920c(a)-(b) do not compel an ALJ to adopt every part of an opinion that she finds persuasive into the RFC" and that the ALJ "was not required to adopt any particular limitation in her RFC determination merely because she found these opinions to be persuasive"), *report and recommendation adopted*, 2021 WL 3721547 (S.D. Fla. Aug. 23, 2021); *Duarte H. v. Comm'r of Soc. Sec.*, No. 20-CV-01491 (N.D. Ga. Apr. 6, 2021) (ECF No. 33 at 34) (acknowledging that under new regulations "ALJ is not required to adopt any doctor's opinion verbatim in making an RFC assessment"); *Freyhagen v. Comm'r of Soc. Sec.*, No. 18-CV-1108-J-MCR, 2019 WL 4686800, at *8 (M.D. Fla. Sept. 26, 2019) (acknowledging ALJ found an opinion persuasive under the new regulations but made a different finding about the severity of an impairment and further explaining "the ALJ's RFC assessment did not need to match or mirror the findings or opinions of any particular medical source" because the ALJ is responsible for assessing the RFC). Lastly, Dr. Fernandez's statement regarding Plaintiff's mental health was internally inconsistent with his treatment notes, which reflect that Plaintiff was "alert and oriented to person, place and time[;] cooperative during the exam. Mini mental was intact. Memory was grossly preserved. Judgment was preserved." *Compare* (R. 1074)*, with* (R. 1075).

Accordingly, the ALJ's evaluation of Dr. Fernandez's statements regarding Plaintiff's mental impairments is not reversible error.

    2. *The ALJ Properly Evaluated the Psychiatric Opinion of ARNP Andino-Rios*

On May 10, 2021, ARNP Andino-Rios completed a Psychiatric Evaluation for Plaintiff. (R. 1398-1406) (Exhibit 14F). ARNP Andino-Rios treated Plaintiff for one year prior to his opinion and diagnosed Plaintiff with bipolar disorder. (R. 1398). According to ARNP Andino-Rios, Plaintiff's mental impairments would likely produce "good days" and "bad days" and Plaintiff was likely to miss work more than four times a month due to her bipolar disorder. *Id.* Plaintiff was also likely to be off task greater than 15% during the workday. (R. 1399).

In terms of ability to do mental work-related activities, ARNP Andino-Rios opined that Plaintiff had poor or no ability to: (i) relate to co-workers; (ii) deal with work stresses; (iii) maintain attention/concentration; (iv) understand, remember, and carry out complex job instructions; and (v) behave in an emotionally stable manner. (R. 1400-01). ARNP Andino-Rios also generally opined that Plaintiff met Listings 12.03 and 12.04.[7] (R. 1404, 1406). The ALJ found ARPN Andino-Rios' opinion unpersuasive and unsupported by the evidence. (R. 29-30).

Plaintiff challenges the ALJ's assessment of ARPN Andino-Rios' opinion on several grounds. First, Plaintiff argues that the ALJ did not sufficiently address the consistency of ARNP Andino-Rios opinion with other evidence. (ECF No. 20-2 at 12). A review of the ALJ's Decision, however, demonstrates otherwise. For example, the ALJ found that:

> there is insufficient evidence suggesting any significant deterioration in the claimant's mental condition. Psychiatric examination on October 21, 2020 revealed the claimant possessed "normal" mood, memory, affect, and judgment. (Exhibit 7F, Page 57). The claimant was also "negative" for any psychiatric or behavioral issues during a review of her symptoms on November 5, 2020 . . . . (Exhibit 10F, Page 20). On March 15, 2021, the claimant was noted to be "negative for depression, suicidal ideas, hallucinations, memory loss, and substance abuse." She was also deemed "not nervous/anxious." (Exhibit 11F, Page 26).
>
> On March 27, 2021, the claimant acknowledged that she was "getting better" as she "take[s] her medication." (Exhibit 19F, Page 107). She again stated, on April 4, 2021, that as she continued her medication, she was "getting better." (Exhibit 19F, Page 103). The claimant also reported on April 23, 2021 that her "stress and depression are reducing[."] (Exhibit 19F, Page 97). Therapy notes from June 6, 2021 relay the claimant's reports of being compliant with her medication and utilizing "positive thinking[,]" which was "helping [her] a lot." (Exhibit 19F, Page 80). As recently as August 31, 2021, the claimant continued to report a decrease in her feelings of depression as well as improvement in her condition with compliance with treatment. (Exhibit 19F, Page 59). Overall, the undersigned finds that the claimant's therapy records fail to corroborate her assertions as it concerns her alleged mental limitations.

***

---

[7] Notwithstanding ARNP Andino-Rios' opinion, Plaintiff does not challenge the ALJ's finding that Plaintiff does not meet the Listings. *See* (R. 29) (ALJ Decision noting lack of medical evidence to establish a Listing).

>As for Nurse Andino's opinions regarding the claimant's ability to perform mental work-related activities (i.e., relating to co-workers, dealing with work stresses, maintaining attention/concentration, et. al.), the [ALJ found] these opinions unpersuasive. Once more, the totality of the medical evidence of record fails to substantiate the level of limitation opined by Nurse Andino. Furthermore, the undersigned notes that Nurse Andino himself determined the claimant's GAF score at the time he submitted his opinions to be "58." (Exhibit 14F, Page 2). As previously discussed, GAF scores ranging from 51-60 indicate only "moderate symptoms or moderate difficulty in social, occupational, or school functioning[."]. Just 15 days after Nurse Andino submitted his opinions, he actually determined the claimant's GAF score to be "62[,"] which is again indicative of only mild symptomology. Obviously these GAF scores, as determined by Nurse Andino himself, directly contradict the extent of limitations he opined.
>
>There are very few objective medical findings that would support a finding of disability premised on the claimant's mental impairments. Dr. Julie Bruno, a State Agency psychological consultant, completed a mental [RFC] assessment of the claimant and opined that the claimant's mental functioning did not prevent her from performing all work activity. It was her opinion that the claimant was capable of following instruction and directions, engaging in two-step tasks, and generally performing simple, routine tasks. (Exhibit 2A, Page 16). Dr. Adrine McKenzie, another State agency psychological consultant, similarly opined the claimant was "capable of [short, simple, routine tasks]." (Exhibit 4A, Page 10). To the extent consistent with the [RFC] indicated, the [ALJ] finds the State agency psychological consultants' opinions persuasive as they are supported by the objective medical findings and the other substantial evidence of record.
>
>In sum, while not denying that the claimant has some restrictions from both the physical and mental impairments discussed in this decision, the [ALJ] is not persuaded that she experiences symptoms of a severity and frequency as to preclude the modest level of work reflected in the above RFC determination.

(R. 29-30); *see also* (R. 1471, 1474. 1477, 1483, 1486, 1495, 1498) (records of visits from 2020 through 2021 with ARNP Andino-Rios documenting Plaintiff's unremarkable mood, thought process, and thought content). Against this summary of the evidence, the ALJ properly supported her conclusion that ARPN Andino-Rios' opinion was inconsistent with the totality of the evidence.

Next, the Court considers Plaintiff's argument that the ALJ improperly relied on GAF scores "in isolation," which scores reflect only moderate symptoms or moderate difficulty in social, occupational, or school functioning. (ECF No. 20-2 at 12-13). Once again, however, Plaintiff's argument is contradicted by the ALJ's fulsome discussion, which addressed more than simply

15

Plaintiff's GAF scores in evaluating the opinion of ARNP Andino-Rios.[8]  For example, in addition to the GAF scores discussed above, the ALJ references numerous records regarding Plaintiff's mental impairments to support her conclusion that Plaintiff was: "negative for behavioral problems;" "alert with normal attention, perception, mood, affect, and speech;" "cooperative;" and was "observed [to be] cooperative and calm with 'rational' thought processes, appropriate thought content, and fair judgment."  (R. 28).  Thus, ALJ explained that "[t]here are very few objective medical findings that would support a finding of disability premised on the claimant's mental impairments," further referencing the mental RFC assessment of the State Agency psychological consultants who concluded that Plaintiff was "capable of following instructions and directions, engaging in two-step tasks, and generally performing simple routine tasks."  (R. 30); *see also* (R. 83) (Exhibit 2A) (on initial review, SSA consultant opinion that Plaintiff could follow instructions and directions, perform two-step, and simple, routine tasks); (R. 96-97) (Exhibit 4A) (SSA consultant opinion on reconsideration that Plaintiff: (i) can carry out simple instructions; (ii) ask simple questions; and (iii) is capable of short, simple, routine tasks within physical limitations).  Against this backdrop, the undersigned finds that the ALJ properly evaluated the medical opinion of ARNP Andino-Rios, and adequately explained both the consistency and supportability factors.  20 C.F.R. § 416.920c(c)(1)-(2).

In evaluating the consistency and supportability factors as to the opinions of Dr. Fernandez and ARNP Andino-Rios, the ALJ is not required to use any particular language or formulations as

---

[8] The ALJ's fulsome discussion also rebuts Plaintiff's argument that the ALJ "cherry-picked" facts to support her finding of non-disability.  *See* (ECF No. 20-2 at 14).  Rather, the ALJ's Decision provides sufficient information to conclude that the ALJ considered Plaintiff's medical condition as a whole and considered all relevant evidence in her determination.  *See, e.g., Herron*, 649 F. App'x at 783 (finding no reversible error where ALJ considered claimant's condition as a whole).  Further, Plaintiff's argument that the ALJ "failed to build a logical bridge" from the evidence of vomiting and abdominal pain to the RFC is unavailing.  *See* (ECF No. 20-2 at 5).  The "logical bridge" language does not alter the applicable substantial evidence standard, which the ALJ here has satisfied.  *Brumbaugh v. Saul*, 850 F. App'x 973, 977 (7th Cir. 2021) (confirming that the "logical bridge" language is descriptive and not a change to the substantial evidence standard).

long as the ALJ applied the proper legal standards and substantial evidence supports her decision. Such is the case here. *See, e.g.*, *Thaxton v. Kijakazi*, No. 20-CV-00616-SRW, 2022 WL 983156, at *8 (M.D. Ala. Mar. 30, 2022) (noting that the ALJ need not use any magic words in discussing whether a medical opinion is supported by evidence from the medical source and whether the opinion is consistent with other evidence of record); *Cox v. Comm'r of Soc. Sec.*, No. 21-CV-53-JMV, 2022 WL 834294, at *3 (N.D. Miss. Mar. 21, 2022) (same); *Gelbart v. Berryhill*, No. 17-CV-61361, 2018 WL 4573145, at *3 (S.D. Fla. Sept. 25, 2018) (concluding that, although regulatory factors were not specifically enumerated and discussed by name, the evaluation of these factors was evident in the ALJ's analysis). Moreover, the ALJ was not required to discuss every piece of evidence or articulate "good cause" to discount the medical opinion. Here, the ALJ followed the regulations and articulated the consistency and supportability of the medical opinions in finding them unpersuasive.[9] *See* 20 C.F.R. § 416.920c(b)(2); *Matos*, 2022 WL 97144, at *4.

Ultimately, the issue is not whether some evidence might support Plaintiff's allegations. *See Dyer*, 395 F.3d at 1210; *Ellison*, 355 F.3d at 1275. Nor is it for the Court to "decide the facts anew, reweigh the evidence, or substitute [its] judgment for that of the [ALJ]." *Winschel*, 631 F.3d at 1178 (citation omitted). Rather, the Court "must scrutinize the record as a whole to determine if the decision reached is reasonable and supported by substantial evidence." *MacGregor*, 786 F.2d at 1053. Furthermore, even if evidence preponderates against the ALJ's Decision, a court must affirm "if the decision is supported by substantial evidence." *Bloodsworth*, 703 F.2d at 1239. Thus, after reviewing the record as a whole, the undersigned finds that substantial evidence supports the ALJ's Decision and that the ALJ applied the proper legal standards in evaluating the medical opinions.

---

[9] Also, the undersigned need not address the parties' arguments regarding the applicability of *Schink v. Commissioner*, 935 F.3d 1245 (11th Cir. 2019) to this case, as Plaintiff concedes that *Schink* is not determinative. *See* (ECF No. 24 at 2-3); *see also* (ECF Nos. 20-2 at 13, 21 at 16-17).

## C. The ALJ Properly Evaluated Plaintiff's Subjective Complaints

Plaintiff challenges the ALJ's creditability determination.[10]  *See* (ECF No. 20-2 at 18-19). The Eleventh Circuit employs a three-part pain standard to evaluate a claimant's attempts to establish disability through testimony about pain and subjective symptoms. *McLain v. Comm'r, Soc. Sec. Admin.*, 676 F. App'x 935, 937 (11th Cir. 2017). This standard requires: (i) evidence of an underlying medical condition, and either (ii) objective medical evidence that confirms the severity of the alleged pain resulting from that condition; or (iii) evidence that the objectively determined medical condition is of such a severity that it can be reasonably expected to give rise to the alleged pain. *Id.* at 937 (citing *Wilson v. Barnhart*, 284 F.3d 1219, 1225 (11th Cir. 2002)).

The ALJ is not required to use any particular language in applying the pain standard, as long as she sufficiently articulates the reasons for discrediting Plaintiff's testimony. *Davis v. Barnhart*, 153 F. App'x 569, 572 (11th Cir. 2005). "A clearly articulated credibility finding with substantial supporting evidence in the record will not be disturbed by a reviewing court." *Jarrell v. Comm'r of Soc. Sec.*, 433 F. App'x 812, 814 (11th Cir. 2011) (quoting *Foote v. Chater*, 67 F.3d 1553, 1562 (11th Cir. 1995)).

Here, the ALJ concluded that "[w]hile [Plaintiff's] medically determinable impairments could reasonably be expected to cause some of the alleged symptoms and limitations, the magnitude of the pain and the extent of those symptoms and limitations attested to by the claimant are not supported by medically acceptable clinical and diagnostic techniques."  (R. 25).  The ALJ further noted that "there is insufficient objective medical evidence that the claimant's asserted impairments are of such severity that they can reasonably be expected to give rise to the alleged level of pain and functional

---

[10] Within her challenge to the ALJ's credibility determination, Plaintiff makes cursory reference to being disabled under the Grids if she is unable to perform medium exertional work. *See* (ECF No. 20-2 at 18).  This unsupported summary argument is deemed waived. *McClain*, 138 F.3d at 1422.

limitations." *Id.* In reaching this conclusion, the ALJ evaluated Plaintiff's subjective complaints against several factors including: (i) her daily activities; (ii) the location, duration, frequency, and intensity of Plaintiff's pain or other symptoms; (iii) factors that precipitate and aggravate her symptoms; (iv) the type, dosage, effectiveness, and side effects of Plaintiff's medication; (v) treatment, other than medication, Plaintiff received for pain relief or other symptoms; (vi) any measure other than treatment Plaintiff uses to relieve pain or other symptoms; and (vii) any other factors concerning Plaintiff's functional limitations due to pain or other symptoms. *Id.*; *see also* 20 C.F.R. § 416.929(c)(3) (setting forth the factors for ALJ's evaluation of symptoms, including pain). Further, after identifying substantial evidence regarding Plaintiff's physical limitations, the ALJ concluded that "[w]hile claimant's records . . . relay her persistent subjective complaints, the objective medical findings have been consistently unremarkable." (R. 27). Further, the ALJ noted that "the objective evidence . . . wholly supports the determination that the claimant retains the ability to perform work at the [RFC] indicated." *Id.*

After a review of the record, the undersigned finds no error in the ALJ's credibility determination. First, although not dispositive, Plaintiff's daily activities support the ALJ's conclusion that Plaintiff's symptoms are not as limiting as alleged. *See* 20 C.F.R. § 416.929(c)(3). In this regard, the ALJ found that Plaintiff's allegations of fairly limited daily activities was "less [than] convincing." (R. 30). The ALJ explained:

> First, allegedly limited daily activities cannot be objectively verified with any reasonable degree of certainty. Secondly, even [if] the claimant's daily activities are truly as limited as alleged, it is difficult to attribute that degree of limitation to the claimant's medical condition, as opposed to other reasons, in view of the relatively weak medical evidence and other factors discussed in this decision. Overall, the claimant's reported limited daily activities are considered to be less persuasive than the other factors discussed in this decision.

(R. 30-31).

Further, Plaintiff's reference to her testimony before the ALJ to support her argument that she could not understand normal conversation, *see* (ECF No. 20-2 at 14), is unpersuasive. Although, Plaintiff was nonresponsive to questions from both the ALJ and her attorney, credibility determinations are the province of the ALJ, and a clearly articulated credibility finding with substantial supporting record evidence will not be disturbed. *Moore*, 405 F.3d at 1212; *Foote*, 67 F.3d at 1562 (citation omitted). Here, the ALJ considered Plaintiff's allegations regarding her pain and impairments, assessed Plaintiff's credibility in the context of all the other evidence through specific questioning at the hearing, and applied the proper legal standard. *See generally Carson*, 440 F. App'x at 864. Thus, the undersigned finds no reversible error regarding the ALJ's credibility determination, which is supported by substantial evidence.

## V. CONCLUSION

For the reasons set forth above, it is hereby **ORDERED AND ADJUDGED** that Plaintiff's Motion for Summary Judgment (ECF No. 20) is **DENIED**, Defendant's Motion for Summary Judgment (ECF No. 21) is **GRANTED**, and the ALJ's Decision is **AFFIRMED**.

Further, this case is administratively **CLOSED** and all pending motions are **DENIED AS MOOT**.

**DONE AND ORDERED** at Chambers, in Fort Lauderdale, Florida on September 29, 2023.

_____
ALICIA O. VALLE
UNITED STATES MAGISTRATE JUDGE

cc:  All Counsel of Record